IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

SCHNADER HARRISON SEGAL & LEWIS

Plaintiff,

v.

LOREN W. HERSHEY,

Defendant

Civil No. 1:12-CV-00928-AJT/IDD

**MEMORANDUM IN REPLY RE:**
**SCHNADER'S MOTION FOR SUMMARY JUDGMENT**

## I.      INTRODUCTION

Mr. Hershey's opposition to Schnader's motion for summary judgment (Doc. No. 50, filed today) fails to demonstrate any genuine issues of material fact.  Therefore, summary judgment should be entered in favor of Schnader on Count I of its Complaint and all counts of Mr. Hershey's counterclaims.

## II.     THE COURT SHOULD DECIDE SCHNADER'S ENTITLEMENT TO JUDGMENT FROM SCHNADER'S "UNDISPUTED FACTS"

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.").  Whether a fact is considered "material" is determined by the

substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

Local Civil Rule 56 sets forth the procedure in this Court for briefing a summary judgment motion.  It provides that "[e]ach brief in support of a motion for summary judgment shall include a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed."  Schnader included in its brief a section captioned "UNDISPUTED FACTS," which lists all material facts Schnader contends are not subject to genuine dispute and, for each, cites to the record.

The Local Rule further provides that "[a] brief in response to such a motion shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute."  Mr. Hershey has no such section in his memorandum. Instead, he leaves it to the Court and to Schnader to try to discern which material facts Hershey contends are disputed.[1]  It is exactly this sort of effort that the Local Rule seeks to avoid.[2]  The Local Rule provides that, "In determining a motion for summary judgment, the Court may

---

[1] Memo. at 2 (Hershey invites the reader to "compare[e] Mr. Hershey's sworn statements in his Affidavit and the accompanying Annexes … with the Schnader version of 'UNDISPUTED FACTS' ….").

[2] *E.g., Taylor v. Republic Servs.*, No. 12-cv-00523-GBL-IDD, 2013 U.S. Dist. LEXIS 11201 (E.D. Va. Jan. 28, 2013) ("[Hershey's] approach, predictably, made it difficult and time-consuming to sort out what, if any, facts really were in dispute and whether any asserted dispute was genuine or related to material facts."); *Smith v. Sec'y of the Army*, No.: 1:11-cv-724, 2012 U.S. Dist. LEXIS 126194 (E.D. Va. Sept. 5, 2012) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."); *Kolon Indus. v. E.I. du Pont de Nemours & Co.*, No. 3:11cv622, 2012 U.S. Dist. LEXIS 48722 (E.D. Va. Apr. 5, 2012) ("This kind of obfuscatory presentation is exactly what Local Civil Rule 56(B) is intended to prevent.").

PHDATA 4314825_3

assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." There being no such statement of genuine issues filed in opposition to the motion, the Court may decide the motion on Schnader's statement of undisputed facts.[3]

## III.    ARGUMENT

Hershey's failure to identify any genuine issues of material fact is not surprising. There are none. Facts, not conclusions, set forth in an affidavit may be considered on a motion for summary judgment if they are competent;[4] to be competent, they must set forth personal knowledge of the declarant and be in a form that would be admissible if the declarant were testifying in court.[5] Nothing in Hershey's Affidavit, however, establishes a genuine issue of material fact. Moreover, predictions about what a party will prove at trial have no role in summary judgment proceedings.

### A.    Schnader is Entitled to Judgment As A Matter of Law On Its Contract Claim

Rather than cite evidence to demonstrate any genuine issues for trial, Hershey offers only innuendo, conclusions, unfounded characterizations, and vituperative assertions, such as "duped him," "Lawyer spin," and "Lawyer churn." An example of this is Hershey's

---

[3] *Foglia v. Clapper*, 885 F. Supp. 2d 821 (E.D. Va. 2012) (citing *Lake Wright Hospitality, LLC v. Holiday Hospitality Franchising, Inc.*, No. 2:07cv530, 2009 WL 2606254, at *3-4, 2009 U.S. Dist. LEXIS 73903 (E.D. Va. Aug. 20, 2009); *BIS Computer Solutions, Inc. v. Halifax Corp.*, No. 3:05cv470, 2006 WL 268803, at *3, 2006 U.S. Dist. LEXIS 7204 (E.D. Va. Jan. 27, 2006) (holding facts identified by moving party and supported by citations to the record deemed admitted in accordance with Local Rule 56(B) where the non-moving party included a section titled "Statement of Disputed Material Facts" that did not identify which of the moving party's assertedly undisputed material facts were in dispute).

[4] *E.g., Bowman v. Johnson*, No. 3:08CV449-HEH, 2011 U.S. Dist. LEXIS 30941 (E.D. Va. Mar. 24, 2011) (holding affidavit evidence must be admissible, made on personal knowledge, and show the affiant is competent to testify on the matters stated).

[5] *Id.*; *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996).

characterization of a series of events indisputably shown by the summary judgment record.[6]  Mr. Englander took the term sheet submitted on behalf of (and with the approval of) Mr. Hershey and created a Settlement and Plan Support Agreement, which he transmitted to Schnader on March 8, 2012. John Britton forwarded it to Hershey on March 9th. Hershey's version of these events is the "active players … sought to 'freeze him out of the negotiations' by a perverted and over-bearing undated document forwarded to him without his prior knowledge or participation on March 9, 2012, with the title 'Settlement and Plan Support Agreement.'"[7]  Such assertions are plainly insufficient to defeat a properly supported summary judgment motion.[8]

Even when Hershey purports to state "facts" regarding the breach of contract claim, they are not material facts.   Hershey asserts that he "carefully reviewed" Schnader's billing statements but intentionally and purposely withheld approval.  Hershey's tortured argument appears to be that payment was not required until he approved but, since he did not approve, he was not required to pay.

Under District of Columbia law, "[w]here no time is specified for the performance of an act, the law implies that it must be done within a reasonable time."[9] Moreover, all District of Columbia contracts contain an implied duty of good faith and fair

---

[6] Schnader's Opening Memo. at 6.

[7] Memo. at 2-3.  He describes this as "unexpected asserted trickery on the part of his newly-retained counsel …."  Memo. at 3.  Another example is found where Hershey characterizes what Harris Bank's lawyer told the bankruptcy court before Schnader became involved in Hershey's cases.  *Compare* Memo. at 6 ("[G]iven the promises made to the Bankruptcy Court on August 16, 2011 by counsel for the Bank") and n.4 ("which presents Bank counsel's promise to assure a Plan of Reorganization in six months or by February 2012") *with* Annex C at 16 ("[W]e have a meeting … to see if we can't try to wrap this case up in the next six months.").

[8] *E.g., Pachaly v. Lynchburg*, 897 F.2d 723, 726 (4th Cir. 1990).

[9] *Independence Mgmt. Co. v. Anderson & Summers, LLC*, 874 A.2d 862, 869 (D.C. 2005).

dealing.[10]  Examples of bad faith that constitute a breach of contract include evasion of the spirit

of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance,

abuse of a power to specify terms, and interference with or failure to cooperate in the other

party's performance.[11]  Therefore, Hershey cannot avoid his contractual obligation to pay for

Schnader's services by indefinitely withholding approval of billing statements.  Moreover,

Hershey's premise is wrong.  The contract does not provide that payment is not due until

Hershey has approved the invoices.  To the contrary, the contract provides, "We agree that you

will pay in full any and all arrearages and replenish the retainer amount to TWENTY-FIVE

THOUSAND DOLLARS ($25,000.00) by February 29, 2012 and on a quarterly basis going

forward ...."[12]

Hershey's "intentional[] and purpose[ful]" refusal to approve any invoices does

not protect him from the obligation to pay in accordance with the contract and does not create a

genuine issue of material fact that precludes summary judgment.

Hershey also appears to argue that questions exist as to the voluntariness of his

execution of the engagement contract and the fairness and reasonableness of the bills.[13]  Contrary

to Hershey's argument, "performance terms are [not] put in dispute [simply] because Mr.

Hershey questions the effectiveness, the timing and the *bona fides* of best efforts ...."[14]  Hershey

has the  burden to show *through evidence* that Schnader breached its contract with him, and he

---

[10] *E.g., Allworth v. Howard Univ.*, 890 A.2d 194 (D.C. 2006) (explaining that the implied duty of good faith and fair dealing "means that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.").
[11] *Id.* at 202 (quoting Restatement (Second) of Contracts § 205)
[12] Plaintiff's Trial Exhibit 188 (Doc. No. 38-19).
[13] Memo. at 5, 7.
[14] Memo. at 6.

has not.   He has offered no evidence even to suggest that his execution of the engagement

contract was other than knowing and voluntary.[15]   His assertions that the "billings presented to

Hershey were viewed by him as unreasonable at the very time they were presented" and,

therefore, "did not meet the standard of reasonableness  under the Rule 1.5(a) standard of the

District of Columbia Rules of Professional Conduct" is a non-sequitur.   Without an expert to

opine on the reasonableness of a bill,[16] Hershey can only offer non-expert personal impressions,

which cannot defeat a properly-supported summary judgment, and even those are in the form of

conclusions, rather than facts.   It bears repeating that Hershey's current litigation posture is at

odds with his previous oral and written admissions that Schnader's work was at all times of the

highest quality.[17]

Finally, Mr. Hershey should be limited by his answers to contention

interrogatories numbered one and six.[18]   Mr. Hershey first was asked to "*State the basis of the

contention* contained in your *Answer's* response to paragraph seven of the *Complaint* that no

Agreement existed between you and *Schnader*."[19]   The italicized terms were defined.[20]   His

response was:

---

[15] *Cf.* Schnader's Opening Memo. at 3-4 (demonstrating through evidence that the engagement contract was negotiated over the course of one week, Hershey had already interviewed several other law firms, that he interviewed four Schnader lawyers prior to signing, and that he understood exactly what he was signing).

[16] *See* Required Additional Initial Disclosures Under Rule 26(a)(2)(A-D) Presented To Schnader Harrison Segal & Lewis LLP By Loren W. Hershey (attached as Exhibit A) ("At this time Mr. Hershey has not determined to present witness testimony and other written evidence under Federal Rules of Evidence 702, 703 or 705 in defense of Schnader's claims or in support of the case-in-chief on Mr. Hershey's claims at trial. Accordingly, Mr. Hershey makes no specific disclosures under paragraph (2)(B), (C) or (D) of Rule 26(a)(2).").

[17] Schnader's Opening Memo. at 12, 13, 17

[18] *See* Doc. Nos. 38-15, 38-16, and 38-17.

[19] Doc. No. 38-15.

PHDATA 4314825_3

The agreement I sought with Schnader is not accurately reflected in the countersigned retainer letter. If I am able to demonstrate and prove at trial that the purported agreement was foisted on me under false pretenses, then that purported agreement may be deemed void ab initio.

I adopt and incorporate by reference each and all of the Averments Nos. 2 to 72 of the Loren W. Hershey Counterclaims Against Schnader Harrison Segal & Lewis, LLP (hereinafter "the Averments of the Counterclaims"). Further, I adopt and incorporate by reference the contents of my April 25, 2012 letter addressed to David Smith and Nicholas L. LePore, III, (hereinafter the "Smith/LePore Letter") which is attachment A hereto.[21]

Then Mr. Hershey was asked to "*State the basis of the contention* contained in your *Answer* to paragraph 14 that any and all fees and costs for which *Schnader* seeks recovery are not fair and reasonable."[22]   Hershey's response was: "If I am able to demonstrate and prove facts sufficient to support one or more of the six counterclaims then, ipso facto, Schnader's purported record of billable fees and costs may consequently be regarded by the finder of fact and concluder of law to be unfair and unreasonable.  I adopt and incorporate by reference the Averments of the Counterclaims. I adopt and incorporate by reference the Smith/LePore Letter."[23]   Hershey subsequently served "Revised and Amended" responses in which he incorporated by reference his prior responses and asserted an "attorney work product privilege" as to "any and all other possible responses ...."[24]

---

*Continued from previous page*

[20] "*State the basis of the contention* means (1) list in detail all facts that you contend support the referenced contention; (2) identify all documents that you contend support the referenced contention; and (3) identify any person known to, believed by you to, or who claims to have knowledge of the facts you contend support the contention."

[21] Doc. No. 38-16.
[22] Doc. No. 38-15, Int. No. 6.
[23] Doc. No. 38-16, Int. No. 6.  *See also* responses to interrogatories seven and eight.
[24] Doc. No. 38-17, at p. 1.

For these reasons, even if the evidence proffered by Mr. Hershey were sufficient to create a genuine issue of material fact with respect to the question of whether he voluntarily signed the engagement contract or whether Schnader's bills were reasonable, which it is not, his interrogatory responses should preclude him from avoiding liability for breach of contract only if he offers evidence sufficient to prove either that the engagement contract was "foisted on [him] under false pretenses" or that he is entitled to prevail on one or more of his six counterclaims, which he has not.

### B.    Schnader is Entitled to Judgment as a Matter of Law on Hershey's Fiduciary Duty Claim

Hershey's argument is a regurgitation of the allegations of his Counterclaims, a flawed syllogism, and a prediction of evidence to come at trial,[25] all of which are irrelevant and legally insufficient to defeat a properly supported motion for summary judgment.  Hershey states that he "now amplifies through his Affidavit his pleading position of Schnader's 'threat to withdraw its services and then its actual withdrawal of its services in precipitous fashion ....'"[26] But Hershey's conclusory allegations of precipitous withdrawal were overcome with facts in Schnader's Opening Memorandum (at 18-9).

The syllogism is that: (1) skilled attorneys negotiate Chapter 11 plans of reorganization in a timely manner when they do not breach their fiduciary duties; (2) the Schnader lawyers did not achieve a negotiated resolution in a timely manner; therefore (3) the Schnader lawyers breached their fiduciary duties.  Here the conclusion is wrong because the major premise is flawed.

---

[25] Memo. at 8.
[26] Memo. at (citing Counterclaim, at ¶ 37).

PHDATA 4314825_3

Although not even mentioned in this section of his memorandum, Hershey in his Affidavit includes several paragraphs arguably related to the timing of reaching a settlement agreement (e.g., paragraphs 9-12).  As with the flawed syllogism, these assertions do not in any way create a genuine issue of material fact.

When Schnader undertook Hershey's representation, he had been ousted from the management of Acadia, had ceded all control to his sons and Mr. Henry, and had no right to manage Acadia.[27]  The speed of plan development, consensus building, and confirmation was not his to control;[28] it was dependent on Acadia, Harris Bank, other creditors, and the Bankruptcy Court.  Therefore, the timing of plan confirmation does nothing to establish a genuine issue of material fact preventing summary judgment in this case.  Indeed, Hershey recites in his Affidavit that Acadia's prior counsel early on had predicted plan confirmation before August 31, 2011, more than three months before Hershey showed up at Schnader's District of Columbia office.[29]  The ability of skilled attorneys to reach an agreement with other parties on any subject depends on a multiplicity of factors.  It depends on the other parties.  It depends on themselves.  It depends on the difficulty of the issues.  And it depends on the skilled attorneys' client's willingness to engage in the process, to compromise, and to commit.  The summary judgment

---

[27] Schnader Opening Memo. at 2.

[28] Except of course for the week he wasted negotiating the terms of engagement.  Schnader's Opening Memo. at 3.

[29] Hershey Aff. at ¶ 17.  Hershey also makes a point of the difference between the administrative costs estimated early in the bankruptcy and the figure to which they have grown.  *Id.* at ¶¶ 21-22. While this has no bearing on the motion for summary judgment and does not create any genuine issue of fact, it would be interesting to know how much of the added expenses are directly attributable to the antics of Mr. Hershey.

PHDATA 4314825_3

record indisputably shows that the skilled attorneys here were hamstrung by a client who steadfastly refused to take a position on a draft agreement.[30]

Paragraph 12 in the Affidavit appears to lay blame on Schnader for the timing of plan confirmation.  First, Hershey asserts that, from his first meeting with John Britton, he "stressed that 'time is of the essence' in the strictest legal sense …."  Second, Hershey asserts that he "instructed Schnader counsel Eric Smith and Richard Barkasy to oppose a further extension of the period of exclusivity within which the Debtor was permitted by the Bankruptcy Court to be the sole proponent of a Plan of Reorganization … and that [they] refused to follow their client's explicit instructions thereby subverting the primary purposes of the Engagement."

The first mention in all of the documents produced in this case of the phrase "time is of the essence" appears in Hershey's letter to Acadia's co-managers on February 22, 2012.[31] Its next appearance is in the Settlement and Plan Support Agreement.[32]  Significantly, however, if Hershey intends to ascribe the "strictest legal sense" of time is of the essence to Schnader's engagement, it fails for at least two reasons.  First, stressing that time is of the essence does not make it a contractual term when it is not contained in the contract.  Second, the contract's scope section does not contain any time deadlines, making time of the essence completely irrelevant.[33] If Hershey intended his "time is of the essence" assertions to mean that he urged his counsel to move it along, he has shown neither that he moved it along nor that it was within his lawyers' control to move it along.

---

[30] Schnader's Opening Memo. at 6-12.
[31] *See* Hershey's Annex A at page 4 of 9.  Notably, it appears in a heading but is not addressed in the body of the letter.
[32] Attachment B to Hershey's Memo.
[33] *See, e.g., Finard & Co. v. Capitol 801 Corp.*, 749 F. Supp. 15, 19 (D.D.C. 1990); *Landow v. Georgetown-Inland West Corp.*, 454 A.2d 310 (D.C. 1982).

PHDATA 4314825_3

Three examples of this (i.e., Hershey's delay and his lawyers' lack of control) are amply illustrated in the existing summary judgment record or in several of Schnader's trial exhibits, all of which "stand admitted in evidence" for lack of any objections.[34]  First, Hershey delayed the initiation of work for one week while he negotiated the details of the engagement contract.[35]  Second, Acadia's counsel refused even to meet with Hershey's counsel to discuss potential settlement unless and until Hershey returned documents that belonged to Acadia and had been withheld by Hershey after he ceded management to the present co-managers.[36]  Third, Hershey himself refused to provide Schnader with any feedback whatsoever on the draft settlement agreement for over three weeks – a failure on Hershey's part that largely contributed to negotiations breaking down.[37]

One of the grounds on which Schnader has moved for summary judgment on Count I of the counterclaim is that Hershey cannot prove causation or damages even if he could prove a breach, which as demonstrated above, he cannot.  Again, Hershey offers no facts or legal arguments in opposition.  He offers only the conclusory (and incorrect) statement that Schnader's claims respecting lack of mitigation, causation, and damages "will require proof at trial."

---

[34] Doc. No. 18 (Order dated Nov. 19, 2012).

[35] Schnader's Opening Memo. at 3-4.

[36] Plaintiff's Trial Exhibit 94 (attached as Exhibit B), which reflects that Schnader began communications with Acadia's counsel on January 4, the day after Eric Smith and Rich Barkasy first met face-to-face with Hershey; that Schnader on January 10 sought a meeting with Acadia's counsel; and that Acadia's counsel refused to meet until Hershey had delivered the withheld records to Acadia ("[T]here is a preliminary matter that needs to be addressed before we meet. Specifically, Loren still has physical possession of certain of company documents, including Certificate No. 31 for the $1.182 million interest in the Principal Protected Trust U/A dated 7/20/2000, and certain other company records. We have requested these documents for months. It would be appropriate for Loren to deliver all these materials to us before we schedule a meeting.").

[37] Plaintiff's Trial Exhibit 254 (attached as Exhibit C).

PHDATA 4314825_3

Hershey first states that "[t]he damages to be proven are measurable and demonstrable" and then asserts that his Affidavit "tie[s] Schnader's termination of services to his claimed damages."[38] The only way Hershey's Affidavit ties termination of services to damages, and we do not see that it does so, is through the last clause of the last paragraph of the Affidavit, which incorporates by reference paragraphs one through 57 of the Counterclaims.  Any allegation of damage in the Counterclaims, however, is conclusory and, therefore, not considered on a motion for summary judgment.

Hershey next states that he "will demonstrate losses to be not less than $4,300,000 and, in addition, losses of $1,950,000 in monies subject to the turn-over proceeding designed to be applied to a Plan of Reorganization. There are such further economic loss to his equity position in Acadia yet to be quantified, Counterclaim, at ¶ 38, but will be quantified at trial."[39] In the context of causation and mitigation, Hershey asserts that "[he] and Schnader will adduce evidence on both sides of this proposition."[40]

"[I]n a summary judgment proceeding the party against whom the burden of proof falls at trial faces a challenge more difficult than otherwise."[41]  Hershey bears the burden of proof at trial on his damages.  Therefore, Hershey faces a more difficult challenge; he must establish a genuine dispute of material fact after Schnader has shown that he cannot prove damages.  Hershey has not even tried to meet the challenge; instead, his response essentially is "see you in court."  Hershey writes: "Schnader deftly argues at length factual matters and

---

[38] Memo. at 8.
[39] Memo. at 8 (quotation marks omitted and emphasis added).
[40] Memo. at 9 (emphasis added).
[41] *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006) (quoting *Alan's of Atlanta, Inc. v. Minolta Corp.*, 903 F.2d 1414, 1425 (11th Cir. 1990)).

causation issues to be otherwise demonstrated and proven at trial with transactional witnesses."[42]

But the only way to court is to "set forth specific facts showing that there is a genuine issue for

trial"[43] and, "[w]here the record taken as a whole could not lead a rational trier of fact to find for

the non-moving party, there is no 'genuine issue for trial.'"[44] While Mr. Hershey's brief offers

nothing more to resist summary judgment as to his Count I,[45] his Affidavit contains additional

assertions that we choose to address.

> Paragraph five of Hershey's Affidavit asserts that he:

> engaged [Schnader] to prepare an offer letter to [Harris Bank] in a
> form and similar structure to the $3.0 million settlement letter
> authored on my behalf by the law firm of Swanson Martin Bell
> LLP of Chicago (attached at Annex A). I engaged Schnader to
> increase the offer in written letter form to $3.5 million payable in
> 30 months.

> The problems with this assertion are at least three-fold.  First, Hershey alleged in

his Counterclaims that he "expressed his desire … to have a letter written on Schnader's

letterhead <u>equivalent</u> to one written by a Chicago law firm dated August 25, 2011 …."[46]

"Equivalent" is inconsistent with an increase of $500,000, and affidavits that are inconsistent

---

[42] Memo. at 9, n.7.

[43] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

[44] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nguyen v. CNA Corp.*, 44 F.3d 234 (4th Cir. 1995).

[45] The brief does <u>assert</u> in the "Background" section that Schnader repeatedly failed to seek access for Hershey to the books and records of Acadia.  Memo. at 3 (arguing that Schnader "'poison[ed] the well' and pervert[ed] the opportunity  for [Hershey to reach a settlement].").  This is pure balderdash, as is evidenced by Plaintiff's Trial Exhibit 83 (attached as Exhibit D), a February 6, 2012, letter from Richard Barkasy to Mr. Englander following up on his request that Mr. Hershey be given access to a "virtual data room" that had been established by order of the Bankruptcy Court.  Moreover, Hershey directly made a statutory demand for the books and records of Acadia, which appears in Annex B to his Affidavit (Doc. No. 50-3).

[46] Counterclaims, ¶ 13.

with pleadings are not competent.[47]  Lest there be doubt, however, Hershey testified that putting a "$3 million settlement proposal" to Harris Bank on Schnader's letterhead was "very much what I sought to have done."[48]  It was his request that Schnader "put on the table a written proposal with appropriate tones with a monetary offering from me that was reflective of that which had been put on the table by the Swanson firm."[49]

Second, such an assertion constitutes parol evidence because the engagement letter actually signed (after Mr. Hershey allegedly voiced his desire about such a letter)[50] by the parties contains no such task.

Third, and most importantly, however, there is no evidence to support that any harm resulted to Mr. Hershey from Schnader not sending Harris Bank such a letter.  There is nothing to suggest that such an offer would have been accepted by Harris Bank, which had "declined to entertain the offer" when it was made by the Swanson firm.[51]  Moreover, the undisputed evidence shows that the offer of $3,500,000 in support was made (with Hershey's approval) as part of the term sheet that Schnader transmitted on January 24, 2012, to Acadia's counsel, who was coordinating with Harris Bank,[52] and it was carried into the settlement agreement drafted by Mr. Englander.[53]

---

[47] *E.g., Rohrbough v. Wyeth Laboratories, Inc.*, 916 F.2d 970, 975 (4th Cir. 1990); *Lee v. Wal-Mart Stores, Inc.*, No. 3:10cv367-DWD, 2011 U.S. App. LEXIS 10543 at *10 (E.D. Va., May 23, 2011) ("The submission of this crucial evidence contradicting prior sworn deposition testimony, without which the case could not 'survive' the motion for summary judgment, is exactly what the 'sham' affidavit rule is designed to prevent.").

[48] Hershey Depo., I-212-3.

[49] Hershey Depo., I-224.

[50] *Id.*

[51] Hershey Depo., I-226.

[52] *See* Schnader's Opening Memo. at 6; Hershey Depo. Exhibit 19 (Doc. No. 38-21) (a letter from Hershey to the Acadia co-managers in which he states that he authorized Schnader to put

*…Continued*

PHDATA 4314825_3

Hershey's further assertion in paragraph 12 that Schnader did not oppose Acadia's motion to extend the period of exclusivity also does not create a genuine issue of material fact.  First, his assertion that he "explicit[ly] instruct[ed]" Schnader to oppose such a motion is at odds with his deposition, in which he testified that "by February 22nd debtor estate's motion to extend the period of exclusivity by 90 days was on the table, and that would have been something that I vigorously advocated to Mr. Barkasy and Mr. Smith.  We ought to file an opposition to it and they declined to do it."[54]  When Acadia moved for the extension of the exclusivity period, Hershey authorized a filing that under the heading of "*Mr. Hershey Initiates Efforts To Work <u>With</u> The Debtor To Devise A Plan of Reorganization*" that stated: "As the Debtor stated in its recent Third Motion to Extend Exclusivity Dates … '**[i]n addition to engaging in negotiations with Harris, the Debtor is in discussions with Loren W. Hershey in an effort to arrive at a global resolution of claims among Harris, the Debtor and Loren W. Hershey.**'"[55]

Finally, even if Hershey had explicitly instructed Schnader to oppose Acadia's motion to further extend the exclusivity period, he can show no resultant harm.  Proof of harm would require expert testimony that opposition to the motion would likely have been fruitful and,

---

*Continued from previous page*

forth the terms at a meeting on January 18, that they were on a term sheet sent on January 24th, and that he understands that the Debtor was working with Harris Bank in formulating a proposed plan of reorganization); Hershey Depo., I-247-8 ("Mr. Englander had positioned himself in this negotiation to be the conduit for conversations with the bank …..").

[53] *See* Doc. No. 38-35 at p. 3, ¶ 3.

[54] Hershey Depo., I-336-7.  Should the case come to trial, Schnader will offer evidence that the issue was discussed and Mr. Hershey was convinced that an opposition was futile and contrary to the progress that was being made in negotiations with Acadia.  The motion to extend the date was, after all, filed between Hershey's submission of a term sheet and Mr. Englander's return of a draft settlement agreement.

[55] Plaintiff's Trial Exhibit 241 (attached as Exhibit E).

moreover, that so limiting the Debtor would have helped Mr. Hershey, who was making efforts to work with the Debtor to devise a plan of reorganization.[56]  Mr. Hershey, however, cannot submit any expert testimony at trial, because he did not identify any such experts.

**C.    Schnader is Entitled to Judgment as a Matter of Law on Hershey's Fraudulent Inducement Claim**

Mr. Hershey again relies, inappropriately, on what he will prove at trial.[57]  Aside from this and the fact that he relies on performance rather than inducement ("Parole [sic] evidence is not the issue here.  Schnader's performance in purporting to negotiate on Mr. Hershey's behalf is."),[58] Schnader stands on its opening brief to address this Fraudulent Inducement claim.

**D.    Schnader is Entitled to Judgment as a Matter of Law on Hershey's Tortious Interference Claim**

Hershey's characterizations of the Schnader lawyers' actions as "devilish" does nothing to remedy his failure to proffer any evidence supporting his allegations of tortious interference with contractual relations.  A claim for tortious interference with contractual relations involves one party disrupting the expectations of another party that was planning to enter a specific contract.[59] Hershey has not identified any similar contract expectancy.

---

[56] *See* Plaintiff's Trial Exhibit 241.
[57] Memo. at 10-11 ("[W]ith the hearing of testimonial evidence, this Court will find that Schnader's attorneys used excessive guile, readily demonstrable, thereby committing fraud in the inducement in persuading Mr. Hershey to retain its service.").
[58] Memo. at 11 (emphasis added).
[59] *See, e.g.*, *Duggin v. Adams*, 360 S.E.2d 832, 234 Va. 221 (Va. 1987) ("Kenneth D. Duggin, Trustee, sued C. Douglas Adams, claiming that Adams tortiously interfered with Duggin's contract rights with Betty B. Williams for the purchase of a tract of land in Fairfax County."); *Maximus, Inc. v. Lockheed Information Management Systems Co*., Inc., 493 S.E.2d 375, 254 Va. 408 (Va. 1997) (Lockheed's complaint to state authorities resulted in cancellation of Maximus's contract).

Hershey now asserts that "all that is required is demonstrating that the service-provider here, the Schnader attorneys staffing the negotiation, had no other intent then to 'freeze' Mr. Hershey out of the proposed Plan of Reorganization."[60]  Even if that preposterous assertion were true, Hershey has offered no evidentiary support for such a conclusion.  And, even if he had, he has not shown any contract expectancy to participate in a plan of reorganization.

Hershey was forced out of Acadia management prior to his first contact with Schnader.[61]  The Operating Agreement, on which Mr. Hershey relies for his tortious interference claim specifies:

•   "Manager" means any of Loren W. Hershey, and any Successor Manager, but <u>shall not include any Person who has ceased to be a Manager</u>.[62]

•   "The Managers shall have exclusive responsibility for the management, operation, and control of the business and affairs of the Company."[63]

•   "No Member, in its capacity as such, shall take part in the management or control of the activities of the Company or transact any business in the name of the Company, it being the Members' intent that such management be conducted by the Managers (each of whom may, but is not required to, be a Member)."[64]

Hershey simply had no expectancy with respect to participation in formulating a plan of reorganization with which there can be tortious interference.  Moreover, Schnader's

---

[60] Memo. at 12.
[61] Schnader's Opening Memo. at 2.
[62] Plaintiff's Trial Exhibit 248 (attached as Exhibit F), at Bates 000020 (emphasis added).
[63] Plaintiff's Trial Exhibit 248, at Bates 000026, at ¶ 5.1(A).
[64] Plaintiff's Trial Exhibit 248, at Bates 000035, at ¶ 10.1(A).

PHDATA 4314825_3

actions have in no way altered any of Hershey's contractual relations with Acadia or any other third party.

Hershey quotes Schnader's statement of the required elements of a claim for tortious interference but then does not identify any facts establishing these elements.  Instead, he broadly refers to "the entirety of the course of conduct of Schnader," as demonstrating the elements of his claim.  He alleges that the Schnader lawyers ignored his requests to "memorialize key negotiating positions, to seek access to Acadia books and records, and to engage in serious and effective negotiations with [Acadia] and with [Harris] Bank …." But he does not cite any evidence to support these alleged examples of Schnader's "malicious intent."  Schnader, on the other hand, has cited record support that it documented every step of the negotiations,[65] that it made multiple requests to access Acadia's books and records,[66] and that it was making significant progress in its negotiations on Hershey's behalf with Acadia prior to Hershey's derailment of the negotiations.[67] There simply are no genuine issues of material fact that can preclude summary judgment.

### E.    Schnader is Entitled to Judgment as a Matter of Law on Hershey's Intentional Infliction of Emotional Distress Claim

Mr. Hershey states his intent to prove his intentional infliction claim at trial.  At the summary judgment stage, however, Hershey must present evidence establishing a genuine dispute of material fact requiring a trial. *Smith v. Ray*, 855 F. Supp. 2d 569  (E.D. Va. 2012) ("When the moving party has met its burden to show that the evidence is insufficient to support

---

[65] Schnader's Opening Memo. at 6.
[66] *See, e.g.*, Doc. No. 38-2 (attaching Schnader's invoices to Mr. Hershey, which contain multiple time entries memorializing Schnader's efforts to gain access for Hershey to Acadia's books and records on January 12, February 2, 3, 6, and 21); Plaintiff's Trial Exhibit 83 (attached as Exhibit D).
[67] Schnader's Opening Memo. at 6.

PHDATA 4314825_3

the nonmoving party's case, the burden shifts to the nonmoving party to present specific facts demonstrating that there is a genuine issue for trial."). He has not done so.

Moreover, when asked what evidence Hershey had to support his allegations of intentional infliction, Hershey refused to disclose his evidence on the basis of an alleged work product privilege.[68]   Therefore, even if Hershey had any evidence, we would move to preclude him from offering it because he refused to disclose it during discovery.   Schnader stands on its opening brief to address this Fraudulent Inducement claim.

### F.   Schnader is Entitled to Judgment as a Matter of Law on Hershey's Conspiracy Act Claim

Hershey claims that the factual basis for his claim is "plain as day."[69]   He offers not a scintilla of evidence to support his charges of <u>criminal</u> conduct against the Schnader lawyers and other respected members of the legal community (i.e., Mr. Englander, Mr. Henry, and Mr. Foley).   When asked in deposition what evidence he had to support this claim, he refused to answer on the grounds of work product privilege.[70]   The result of his failure to proffer evidence and his refusal to answer questions about such evidence, in the face of such serious charges, is "plain as day."

### G.   Schnader is Entitled to Judgment as a Matter of Law on Hershey's Attempted Conspiracy Act Claim

Hershey asserts that the evidence he discussed in support of his statutory conspiracy claim applies equally to his attempt count,[71] but Hershey did not offer any evidence in support of that claim.   He again assures the Court that the alleged conspiracy or attempted

---

[68] Hershey Depo., III-73-5.
[69] Memo. at 17.
[70] Hershey Depo., III-102-3.
[71] Memo. at 18.

conspiracy will be proven by "the testimonial record at trial," which will be "replete with a sequence of events from at least January 18, 2012." Trial will be too late for him because the failure to adduce evidence leads to the conclusion that summary judgment in favor of Schnader should be granted.

## IV.    CONCLUSION

For the foregoing reasons, as well as those stated in the opening memorandum, Schnader should be granted summary judgment on Count I of its Complaint and on all counts of Hershey's Counterclaims.

Dated:  March 13, 2013                     Respectfully submitted,

                                            SCHNADER HARRISON SEGAL & LEWIS LLP


/s/ Jonathan M. Stern
Jonathan Stern (Va. Bar No. 41930)
Schnader Harrison Segal & Lewis LLP
750 Ninth Street, N.W., Suite 550
Washington, DC 20001-4534
Phone: 202-419-4202
Fax:    202-419-4252
Email: jstern@schnader.com
Levi Jones (Va. Bar No. 78644)
ljones@schnader.com

PHDATA 4314825_3

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2013, I electronically filed the foregoing Memorandum in Support of Motion for Summary Judgment. This document was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all parties using the CM/ECF system.

I also hereby certify that on March 13, 2013, I emailed to Mr. Hershey at lwhesq@aol.com and deposited a true copy of this Memorandum in Support of Motion for Summary Judgment into a receptacle for the U.S. mail after placing them in an envelope with first-class postage and addressing them to the following party:

> Loren W. Hershey
> 1725 I Street, N.W.
> Suite 300
> Washington, D.C.  20006

> /s/ Jonathan M. Stern
> Jonathan Stern (Va. Bar No. 41930)
> Schnader Harrison Segal & Lewis LLP
> 750 Ninth Street, N.W., Suite 550
> Washington, DC 20001-4534
> Phone: 202-419-4202
> Fax:    202-419-4252
> jstern@schnader.com

PHDATA 4314825_3