IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SCHNADER HARRISON SEGAL & LEWIS LLP, <br><br> Plaintiff, <br><br> v. <br><br> LOREN W. HERSHEY, <br><br> Defendant | Civil No. 1:12-CV-00928-AJT/IDD |

## MOTION FOR RULE 11 SANCTIONS

Schnader Harrison Segal & Lewis LLP ("Schnader") moves the court for an order awarding reasonable attorney's fees and other expenses and imposing other appropriate sanctions against Defendant Loren W. Hershey, appearing *pro se*, for violating Federal Rule of Civil Procedure 11(b).

This motion is made on the grounds that:

1. Mr. Hershey was fully aware prior to his filing any document in this action that there was no evidentiary support for the allegations in his Counterclaims that:

   a. "At all times that Mr. Britton and Mr. Smith promised Mr. Hershey that their 'litigation strategy' was the best approach to achieving Mr. Hershey's business goals and economic objectives, these two partners of Schnader did so knowing that they intended to withhold from Mr. Hershey the resources of Schnader by not assigning a senior partner knowledgeable in private equity investments. Mr. Britton and Mr. Smith did so willfully and intentionally and thereby caused Mr. Hershey to enter into the engagement letter dated December 14, 2011 under false pretenses." Counterclaim at ¶ 40.

  b. "Mr. Britton and Mr. Smith caused Mr. Hershey to pursue a legal strategy with higher costs and higher risks than the one Mr. Hershey desired to pursue. Mr. Britton and Mr. Smith did not disclose to Mr. Hershey any prospective costs by way of a budget their firm could best estimate, nor discuss with Mr. Hershey the risks associated with their designed 'litigation strategy.' In so doing, Mr. Britton and Mr. Smith intentionally concealed from Mr. Hershey the 'real strategy' which was to steer him into a 'global settlement' that would be injurious to his business goals, his economic interests and the economic interests of his family through their membership interests in Acadia." Counterclaim at ¶ 41.

  c. "Mr. Britton and Mr. Smith counseled a legal strategy to Mr. Hershey which intentionally interfered with Mr. Hershey's stated business goals and economic opportunities and thereby caused economic loss to Mr. Hershey of not less than $4,300,000 and of $1,950,000 in monies subject to the 'turn-over proceeding' and such further economic loss to his equity position in Acadia yet to be quantified." Counterclaim at ¶ 47.

  d. "Mr. Britton and Mr. Smith engaged in a sequence of bad faith communications beginning at some time in December 2011, but not later than Monday, December 19, 2011. These bad faith communications were intended by Mr. Britton and Mr. Smith to increase the mental and emotional stress on Mr. Hershey with the express purpose of causing Mr. Hershey great personal injury. Said bad faith communications including the inducements to enter into the engagement letter dated December 14, 2011 were done willfully and with the malicious purpose of causing Mr. Hershey severe emotional distress and otherwise prevented or inhibited Mr. Hershey's ability to recover from his Sleep Disorder and its effects more rapidly than would otherwise have been possible for him to do." Counterclaim at ¶ 50.

  e. "Mr. Smith and Mr. Britton embarked on an <u>ultra</u> <u>vires</u> course of conduct which produced the proposed 'Settlement and Plan Support Agreement' on or about March 9, 2012." Counterclaim at ¶ 56.

  f. "In failing to follow Mr. Hershey's instructions and requests, Mr. Smith and Mr. Britton willfully, intentionally and with malice intended injury to Mr. Hershey's Claim against the Debtor, to his equity holder position in Acadia, to the investment strategy embedded in the Acadia portfolio and to the equity holder positions of all of Acadia's members." Counterclaim at ¶ 63.

  g. "At all times from the surfacing of the 'Settlement and Plan Support Agreement,' and for sometime before but not sooner than December 6, 2011, Mr. Britton, Mr. Smith, Mr. Englander, Mr. Henry and Mr. Foley, on their own behalves and on behalf of Harris Bank, intended to unfairly and wrongfully diminish and decrease the assets of Acadia and of Mr. Hershey and to unfairly and wrongfully diminish the income-generating actuality and potential of the assets of Acadia and of Mr. Hershey." Counterclaim at ¶ 64.

  h. "Mr. Britton, Mr. Smith, Mr. Englander, Mr. Henry and Mr. Foley engaged in an exchange of communications under the purported protection of Rule 408 of the Federal Rules of Evidence to devise and implement a series of actions and a course of conduct designed to injure the investment strategy put in place by Mr. Hershey over an 11-year period up to and including the filing of a Voluntary Chapter 11 Petition on April 7, 2011 and thereby to injure and do harm to the equity holder position of Mr. Hershey and all of the Acadia members." Counterclaim at ¶ 65.

2. Mr. Hershey was fully aware prior to filing his Counterclaim that it was not warranted by existing law or a nonfrivolous argument for the extension, modification, or reversal of existing law. In particular,

a. Existing law requires that there be intent to deceive before a fraudulent inducement claim may be stated. Mr. Hershey alleges that John Britton and Eric Smith fraudulently caused him to enter into a contract with Schnader by not assigning a senior partner knowledgeable in private equity investments. But the engagement letter Mr. Hershey reviewed, edited, and signed contained no such requirement. Furthermore, the attorneys assigned to Mr. Hershey's case were fully qualified to perform the objectives set forth in the engagement letter. This is evidenced by the progress achieved by Schnader on Mr. Hershey's behalf before his actions thwarted that progress and made Schnader's withdrawal as counsel necessary.

b. Existing law requires that there be an intentional procurement of a breach of contract before a claim for tortious interference with contractual relations may be stated. Mr. Hershey alleges that Schnader interfered with his relationship with Acadia by counseling a legal strategy that intentionally interfered with Mr. Hershey's stated business goals. But Mr. Hershey was fully aware at the time he made this allegation that there are no facts supporting this allegation or showing why Schnader would be motivated to interfere with any such contractual relations.

  c. Existing law requires that there be extreme or outrageous conduct before a claim for intentional infliction of emotional distress may be stated. But Mr. Hershey, as the person alleging such emotional distress, was fully aware at the time he made this allegation that Schnader has not committed any acts that could reasonably be characterized as extreme or outrageous.

  d. Va. Code § 18.2-499(A) requires that there be an agreement to willfully damage the business of another before a claim for conspiracy to injure assets, business interests, and trade secrets may be stated. Mr. Hershey alleges that Mr. Smith and Mr. Britton acted without authority in producing the draft Settlement Agreement and that Mr. Hershey identified incorrect financials Acadia used to support sales of assets and that Schnader conspired with Bradford Englander, Bruce Henry, and Douglas Foley to injure Acadia and its members, all in violation of Virginia Code § 18.2-499(A). But Mr. Hershey was fully aware at the time he made these allegations that there are no facts supporting these allegations or showing why Schnader would be motivated to enter into such a conspiracy.

  3. Schnader contends that the record clearly shows that Mr. Hershey's Counterclaim was filed solely for the improper purposes of harassment, delay, and increase in cost. In particular, Mr. Hershey's Counterclaims were filed for the purposes of causing Schnader to incur unnecessary expense and expend unnecessary effort in its attempt to recover the legal fees it is owed by Mr. Hershey and to allow Mr. Hershey to unfairly extend the time before he is required to pay.

-6-

For the foregoing reasons and those to be further developed at an appropriate time, Schnader requests that the Court impose sanctions and grant it such other and further relief as the facts and the law warrant.

Dated: February 4, 2013          SCHNADER HARRISON SEGAL & LEWIS LLP

By: _____
Jonathan Stern (Va. Bar No. 41930)
Schnader Harrison Segal & Lewis LLP
750 Ninth Street, N.W., Suite 550
Washington, DC 20001-4534
Phone: 202-419-4202
Fax: 202-419-4252
jstern@schnader.com
Levi Jones (Va. Bar No. 78644)
ljones@schnader.com

## CERTIFICATE OF SERVICE

I hereby certify that, on this 4th day of February 2013, I served the foregoing **MOTION FOR RULE 11 SANCTIONS**, by placing such document in the hands of the following:

Loren W. Hershey
1725 I Street, NW
Suite 300
Washington, DC 20006

_____
Jonathan M. Stern

**CERTIFICATE OF SERVICE**

I hereby certify that on March 14, 2013, I electronically filed the foregoing Motion for Rule 11 Sanctions.  This document was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all parties using the CM/ECF system.

I also hereby certify that on March 14, 2013, I deposited a true copy of this Motion for Rule 11 Sanctions into a receptacle for the U.S. mail after placing them in an envelope with first-class postage and addressing them to the following party:

        Loren W. Hershey
        1725 I Street, N.W.
        Suite 300
        Washington, D.C.  20006

        _____
        Levi Jones (Va. Bar No. 78644)
        Schnader Harrison Segal & Lewis LLP
        750 Ninth Street, N.W., Suite 550
        Washington, DC 20001-4534
        Phone: 202-419-4211
        Fax:    202-419-4244
        ljones@schnader.com